U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed March 30, 2010                                             **United States Bankruptcy Judge**

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| SL MANAGEMENT, LLC, | § § | Case No.: 08-40143-rfn-11 |
| Debtor | § | |

| | | |
|---|---|---|
| DEWEY WEAVER | § § § | |
| Plaintiff | § § | |
| v. | § § | Adv. No.: 09-04254 |
| TEXAS CAPITAL BANK N.A. | § § § | |
| Defendant | § | |

### PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW WITH RESPECT TO CROSS-MOTIONS FOR SUMMARY JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION:

1

The United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, submits these proposed findings of fact and conclusions of law with respect to the cross-motions for summary judgment filed by Plaintiff Dewey Weaver and Defendant Texas Capital Bank N.A.

## I. FACTUAL BACKGROUND

### A. The Parties

SL Management, LLC ("SL") was a Louisiana limited liability company that bought and sold real estate in Texas. Between October 2004 and September 2006, SL executed and delivered four promissory notes to Texas Capital Bank N.A. in amounts ranging from $216,719 to $276,000. The notes were secured by eleven tracts of land in Lake Worth, Texas.

Plaintiff Dewey Weaver was a member of SL. To facilitate the loan transactions, Weaver and his business partner, Walter Dootson, executed and delivered personal guaranties for each of the promissory notes. In the guaranties Weaver and Dootson unconditionally agreed to fully satisfy SL's debt to Texas Capital. SL's business declined in 2006, and as a result, SL defaulted on its obligations to Texas Capital and others.

### B. SL's Bankruptcy Case

On January 16, 2008, SL filed a petition for relief under chapter 11 in this district and division. Texas Capital appeared in SL's bankruptcy case and filed a proof of claim for $756,000. Neither SL nor Weaver objected to Texas Capital's proof of claim.

On March 6, 2008, SL filed a plan of reorganization. The plan classified Texas Capital as the Class 10 creditor, and provided that:

> The Debtor shall sell [Texas Capital's collateral] to The Champions Group, or its designee ("Champions"), pursuant to that certain Motion to Sell ("Sale Motion") filed with the Court on March 6, 2008. It is anticipated that the sale of these properties will occur prior to the Effective Date and that Texas will have no

2

> remaining claim in Debtor's estate. In the event the Court does not approve the Sale Motion or if any of [Texas Capital's collateral] are not purchased by Champions as required by Sale Motion, the Debtor shall upon the Effective Date surrender all Debtor's interest [in Texas Capital's collateral] to the Class 10 creditor under 11 U.S.C. 1129(b)(2)(iii) in full satisfaction of the Class 10 claims. To the extent the Court after notice and hearing determines that the cumulative value of the properties to be surrendered to Texas under this Plan is less than the cumulative amount of the Allowed Texas Secured Claim, any deficiency shall be treated as a Class 12 claim and paid in accordance with the Class 12 treatment.

Plan § 5.11. Under the plan, Class 12 claims (unsecured creditors) would be paid from contributions to be made by Weaver. Plan § 6.2. The plan also contained the following provision:

> Notwithstanding anything contained herein to the contrary, neither Debtor, Reorganized Debtor, guarantors of the Debtor, or any people liable on a debt with the Debtor shall be discharged and released from any liability for claims and debts under this plan, *however, the exclusive remedy for payment of any claim or debt so long as the plan is not in default shall be the plan*.

Plan § 10.3 (emphasis added).

On April 4, 2008, Texas Capital filed a motion for relief from stay. In response to the motion, SL agreed to make adequate protection payments to Texas Capital, agreed to provide proof of insurance, and anticipated that it would sell the collateral by June 30, 2008. SL failed to comply with any of these covenants. Accordingly, Texas Capital filed a notice of termination of the stay, and on August 12, 2008, posted the collateral for foreclosure.

Texas Capital then voted to reject SL's plan and objected to its confirmation on the ground that the reserve for unsecured claims was too small, placing its deficiency claim at risk. Texas Capital did not, however, object to section 5.11 of the plan, which provided alternatively for sale or surrender of Texas Capital's collateral and the establishment of any deficiency via a valuation hearing. It also did not object to section 10.3, which enjoined collection efforts against the guarantors as long as the plan was not in default.

3

At the confirmation hearing, SL announced it had resolved Texas Capital's objection by clarifying that to the extent any deficiency was determined to exist, it would be treated as a general unsecured claim. Based upon that announcement, Texas Capital withdrew its objection and voted in favor of the plan. On September 2, 2008, this court confirmed SL's plan, as clarified by the announcements made by the parties on the record. Neither party asked this court to value the collateral at the confirmation hearing.

Under the plan, Texas Capital's collateral was to be sold within thirty days of confirmation; if not, it would be deemed surrendered to Texas Capital. Plan § 5.11. SL never sold the collateral pursuant to the plan, so as of October 13, 2008, the collateral was deemed surrendered.[1] Notwithstanding the surrender, neither party requested a valuation of the collateral by the bankruptcy court. Instead, Texas Capital foreclosed on the collateral on December 1, 2008. According to Texas Capital, the foreclosure left a deficiency of $334,986.45, plus various fees, expenses, and interest.

### C. Texas Capital's Suit on Weaver's Guaranty

During SL's bankruptcy case, Texas Capital filed an action to enforce the guaranties of Weaver and Dootson in the 141st District Court in Tarrant County, Texas. Weaver did not answer or otherwise respond to the suit, and the state court entered a default judgment against him for $766,645.79 on December 15, 2008. Texas Capital then initiated collection proceedings against Weaver in Louisiana state court in February 2009.

### D. Weaver's Suit for Declaratory Relief

In response to the Louisiana collection proceeding, Weaver filed this action in the United States District Court for the Northern District of Texas, Dallas Division ("District Court" or

---

[1] Under Plan § 5.11, the surrender of the collateral occurred on the Effective Date of the plan, which was "thirty days after the Final Confirmation Date." Plan § 1.18. The Final Confirmation Date was eleven days after the entry of the confirmation order. Plan § 1.21.

4

"Court"). Weaver alleges in his complaint that SL's debt to Texas Capital was fully satisfied by its surrender of the collateral. Accordingly, Weaver argues that the surrender extinguished his liability as well.

On April 1, 2009, Texas Capital moved the District Court to transfer this action to this court, asserting that Weaver's claims are core proceedings arising in SL's bankruptcy case. On July 23, 2009, the District Court ordered the case transferred to this court for the submission of proposed findings of fact and conclusions of law as to its final disposition. The parties have filed cross-motions for summary judgment. Both parties agree that the case can and should be resolved by summary judgment.

## II. STANDARD OF REVIEW FOR SUMMARY JUDGMENT MOTIONS

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The moving party bears the initial burden of informing the court of the basis for summary judgment and identifying those portions of the record that indicate a lack of genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); FED. R. CIV. P. 56(a), (b). Once the movant has met his initial burden, he is entitled to judgment as a matter of law if the nonmovant "fail[s] to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex*, 477 U.S. at 323. The court draws inferences in favor of the nonmovant when the parties submit evidence of contradictory facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995). The court will not, however, assume that the nonmovant would or could prove necessary facts. *McCallum*, 66 F.3d at 92.

### III. LEGAL ANALYSIS

**A. First Proposed Conclusion: SL's Surrender of the Collateral Was Presumed to Be in Full Satisfaction of Its Debt to Texas Capital, But Texas Capital Is Not Foreclosed from Moving to Reopen the Bankruptcy Case to Seek a Deficiency Claim in a Valuation Hearing.**

**B. Second Proposed Conclusion: The Plan Enjoined Texas Capital from Pursuing a Collection Action against Weaver Without (1) Establishing a Deficiency Via a Valuation Hearing in the Bankruptcy Court and (2) Weaver Defaulting on His Obligation under the Plan to Pay the Deficiency.**

Weaver asks the court to declare that SL's surrender of Texas Capital's collateral pursuant to the plan satisfied in full any claim that Texas Capital had against SL and Weaver. Weaver's full-satisfaction argument is based upon section 5.11 of the plan, which states that if the collateral is not sold, "the Debtor shall upon the Effective Date surrender all Debtor's interest [in Texas Capital's collateral] to the Class 10 creditor . . . in full satisfaction of the Class 10 claims." Plan § 5.11. But, section 5.11 also contains the following statement:

> To the extent the Court after notice and hearing determines that the cumulative value of the properties to be surrendered to Texas under this Plan is less than the cumulative amount of the Allowed Texas Secured Claim, any deficiency shall be treated as a Class 12 claim and paid in accordance with the Class 12 treatment.

*Id.*

These two provisions are facially inconsistent, but can be reconciled. Read together, they mean that if the collateral is surrendered, it is deemed in full satisfaction of the debt. However, if the bankruptcy court sets the value of the collateral at a valuation hearing, Texas Capital is entitled to recover the difference between its claim and the court's valuation. That difference—the deficiency—is to be treated as a Class 12 claim, which is to be paid by Weaver up to $500,000. Plan § 6.2.

Weaver does not reject this interpretation of the plan. Indeed, he adopts it. Nevertheless, Weaver contends that the surrender of the collateral was in full satisfaction of the debt because

6

Texas Capital never requested a valuation of the collateral. He further contends that it is too late for Texas Capital to establish a deficiency because SL's bankruptcy case is now closed and Texas Capital failed to object to the entry of the final decree closing the case.

Texas Capital is not barred from pursuing a deficiency against Weaver. First, SL's plan never set any deadline for Texas Capital to seek a valuation hearing in the bankruptcy court. Because it failed to do so, neither SL nor Weaver can unilaterally and retroactively set the date of the final decree as the bar date for such valuation.

Second, the entry of a final decree has no preclusive effect regarding the payment of claims. Section 350 of the Bankruptcy Code provides that "[a]fter an estate is fully administered and the court has discharged the trustee, the court shall close the case." 11 U.S.C. § 350. Section 350 makes no mention of paying claims in accordance with the plan, but instead refers to the estate being "fully administered."

While the phrase "fully administered" is somewhat nebulous, it is well-established that it does not require that all claims be paid as a condition to closing the case. Rule 3022 of the Federal Rules of Bankruptcy Procedure correlates to section 350 of the Bankruptcy Code. Rule 3022 provides that after an estate is "fully administered" in a chapter 11 case, "the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case." FED. R. BANKR. P. 3022. The Advisory Committee's Note to Rule 3022 makes clear that the payment of claims is not the equivalent of fully administering the estate. FED. R. BANKR. P. 3022 advisory committee's note. It says, "The entry of a final decree closing a chapter 11 case should not be delayed solely because the payments required by the plan have not been completed." *Id*. The same Note goes on to say that a "final decree closing the case after the estate is fully administered does not deprive the court of jurisdiction to enforce or interpret its own orders and

7

does not prevent the court from reopening the case for cause pursuant to § 350(b) of the Code." *Id.*

Under section 350(b), a bankruptcy court may reopen a case "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). Bankruptcy courts have significant flexibility in deciding whether to close or reopen bankruptcy cases. *In re Union Home and Indus., Inc.*, 375 B.R. 912, 917 (B.A.P. 10th Cir. 2007). Thus, upon a showing of cause by Texas Capital, this court may reopen the bankruptcy case to conduct a valuation hearing.

In granting SL's application for entry of a final decree closing the case, this court was not required to find that all claims had been paid in accordance with the plan, and it did not do so. Therefore, the closing of the case does not preclude Texas Capital from asserting that it was not paid in full pursuant to the plan.

Nevertheless, Weaver is partly correct. Under the plan, the surrender of the collateral is presumed to be in full satisfaction of Texas Capital's debt. Plan § 5.11. That presumption stands unless a party—presumably Texas Capital—requests a valuation of the collateral. In the absence of such valuation, the establishment of a deficiency, and Weaver's failure to pay that deficiency, SL is not in default under the plan. And, as long as SL is not in default under the plan, collection actions against Weaver are enjoined. Plan § 10.3.

**C. Third Proposed Conclusion: Weaver Is Not Barred by *Res Judicata* from Contesting a Deficiency under the Guaranty.**

Texas Capital devotes much of its briefing to what it perceives as Weaver's argument that he was discharged or released pursuant to SL's plan. Texas Capital contends that the plan could not release or discharge Weaver, especially over Texas Capital's objection.

Texas Capital misses Weaver's point. Weaver's argument is not that the plan released him, but that Texas Capital was paid in full pursuant to the plan via the surrender of the collateral; hence, Weaver's guaranty obligation has been satisfied. As the court noted above, SL's surrender of the collateral to Texas Capital was deemed in full satisfaction of its obligation, but that presumption can be overcome by Texas Capital moving to reopen the case and requesting a valuation hearing.

Texas Capital, however, regards the valuation hearing as unnecessary. According to Texas Capital, its deficiency has already been established via foreclosure of the collateral and its judgment on the guaranty in state court. Texas Capital notes—without contradiction—that Weaver never answered the state court petition, never appealed, and never moved to reconsider the state court judgment. As such, Texas Capital contends that two doctrines now preclude Weaver from asserting his paid-in-full defense and, presumably, having a second bite at the apple in a valuation hearing.

First, Texas Capital argues that Weaver is barred by *res judicata* from relitigating the issue of his liability for the deficiency since that matter is now the subject of a final order in state court. Yet, this court has concluded that when Texas Capital pursued its deficiency action against Weaver, SL was not in default under the plan. And, because SL was not in default, Texas Capital was enjoined from pursuing Weaver on his guaranty. Thus, Texas Capital's argument is that the District Court should accord *res judicata* effect to the state court judgment, notwithstanding the fact that it pursued the judgment in violation of a federal court order.

Texas Capital's argument first requires the court to determine whether actions taken in violation of its injunction are void. In the fifth circuit, they are not. *Suntex Dairy v. Bergland*, 591 F.2d 1063, 1068 (5th Cir. 1979) (citing *Davis v. Prudential Ins. Co. of America*, 331 F.2d

346, 350 (5th Cir. 1964)). This is because injunctions operate in personam and not in rem. *Id.* As such, injunctions typically are not effective against third parties (such as state courts) who act without knowledge of them. *Id.* at 1068 n.4.

Based upon the foregoing authorities, the court concludes that the state court judgment against Weaver is not void *ab initio*. The facts of this case might raise the question of whether the state court judgment could or should be voided by the District Court, but the Court need not address that issue because Weaver himself has not raised it. In his complaint, Weaver does not ask the District Court to void the state court judgment, but to declare that the plan fully satisfied SL's and Weaver's debt to Texas Capital.

Nevertheless, given Texas Capital's request that the Court give *res judicata* effect to the state court judgment, it cannot be ignored. This court respectfully submits that the proper response to Texas Capital's plea of *res judicata* is to deny it.

Although the power of a bankruptcy court to void a judgment taken in violation of its injunction may be subject to question, its ability to sanction contumacious conduct is not. *See United Student Aid Funds, Inc. v. Espinosa*, ___ U.S. ___, 2010 WL 1027825, at *10 (Mar. 23, 2010). When the inherent power to sanction violations of its orders is combined with the authority under section 105(a) of the Bankruptcy Code, the bankruptcy court has broad power to fashion a remedy under these circumstances. *See* 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate *to enforce or implement court orders* or rules, or to prevent an abuse of process.") (emphasis added). This broad power includes the ability of the bankruptcy court—

and, hence, the District Court, from whom its power derives—to refuse to give preclusive effect to a judgment taken in violation of the bankruptcy court's orders.

While there is much to condemn in Weaver's failure to respond to the state court proceedings—a failure that Weaver may yet answer for in interest, fees, and expenses that accumulated as a result of his inaction—Texas Capital cannot escape the fact that it acted in violation of this court's order. Indeed, while Texas Capital asks to accord *res judicata* effect to the state court order, it ignores the fact that this court's order confirming the plan is itself *res judicata*. *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1054 (5th Cir. 1987). And, the effect of that order was to confirm that there is no deficiency claim absent its establishment at a valuation hearing in the bankruptcy court.

**D. Fourth Proposed Conclusion: Weaver's Action Is Not Barred by the Rooker-Feldman Doctrine.**

Texas Capital next argues that the Rooker-Feldman doctrine precludes the Court from reviewing or modifying the state court judgment against Weaver. The Rooker-Feldman doctrine applies to those "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Thus, a losing party may not seek what amounts to appellate review of a state court judgment in a federal district court by arguing that the state court judgment violates the losing party's federal rights. *See Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994).

The Rooker-Feldman doctrine is not implicated here. Texas Capital does not contend that the state court considered, much less relied upon, the effect of this court's order confirming the plan, which, among other things, deemed surrender of the collateral to be in full satisfaction of Texas Capital's claim, required that any deficiency on SL's debt be established in a valuation

hearing in the bankruptcy court, and enjoined Texas Capital from collection actions against Weaver until SL defaulted on the obligation to pay the deficiency.

Moreover, Weaver has not asked the District Court to review or set aside the state court judgment. Instead, he has merely asked the Court to declare the effect of the bankruptcy court's order confirming the plan. Thus, while Weaver may be a state court loser, he is not asking the District Court to conduct an appellate review of the state court judgment. For these reasons, Weaver's action is not barred by the Rooker-Feldman doctrine.

### IV. SUMMARY OF CONCLUSIONS

For the foregoing reasons, the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, respectfully recommends that the United States District Court grant in part and deny in part the parties' respective motions for summary judgment and that it declare:

(a) SL's surrender of the collateral was presumed to be in full satisfaction of its debt to Texas Capital, but Texas Capital is not foreclosed from moving to reopen the bankruptcy case to seek a deficiency claim in a valuation hearing;

(b) The plan enjoined Texas Capital from pursuing a collection action against Weaver without (1) establishing a deficiency via a valuation hearing in the bankruptcy court and (2) Weaver defaulting on his obligation under the plan to pay the deficiency;

(c) Weaver is not barred by *res judicata* from contesting his liability under the guaranty; and

(d) Weaver's action is not barred by the Rooker-Feldman doctrine.

Respectfully Submitted,

_____/s/_____
Russell F. Nelms
United States Bankruptcy Judge